[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15122
Non-Argument Calendar

_____

D. C. Docket No. 04-01029-CV-J-32-MCR

LARRY JONES HAND, III,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 15, 2008)

Before BIRCH, CARNES and HULL, Circuit Judges.

PER CURIAM:

Larry Jones Hand, III, a Florida prisoner serving a life without parole sentence for first degree murder and various other crimes, appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition. The district court granted a certificate of appealability on the issue of whether Hand received ineffective assistance of counsel. Hand contends that he received ineffective assistance in three ways: (1) counsel failed to properly investigate an insanity defense in his murder trial; (2) counsel's fee agreement created a conflict of interest by requiring counsel to pay all costs and witness expenses; and (3) counsel erroneously argued that Hand and the murder victim were seen together shortly before the murder.

## I.

We review de novo the district court's denial of a habeas petition under 28 U.S.C. § 2254, but we review the underlying state court's determination under the "highly deferential" standard established by the Antiterrorism and Effective Death Penalty Act of 1996. See Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1303 (11th Cir. 2005). Under the AEDPA, federal courts may grant habeas corpus relief on claims that were previously adjudicated on the merits by a state court where the state court's decision: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) was "based on an

2

unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." Id. at § 2254(d)(2). "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the petitioner's case." Williams v. Taylor, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 1523 (2000). The state court's application of the principle must be more than incorrect, it must be "objectively unreasonable." Bell, 535 U.S. at 694, 122 S. Ct. at 1850 (citation omitted).

## II.

Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).[1] Under Strickland, counsel's performance must be deficient and that deficiency must have prejudiced his defense. See id. at 687, 104 S. Ct. 2064.

_____

[1] Although the state trial court cited to Occhicone v. State, 768 So. 2d 1037 (Fla. 2000) for the ineffective assistance standard, that case applies the standard set forth in Strickland v. Washington. See id. at 1044–45.

3

**A.**

Hand first contends that his counsel, Daniel Ciener, was ineffective in failing to properly investigate an insanity defense. He argues that the state court's conclusion to the contrary was an unreasonable application of Strickland. Therefore, for Hand to succeed, he must demonstrate that the state court's application of Strickland was objectively unreasonable. See Bell, 535 U.S. at 694, 122 S. Ct. at 1850 (citation omitted).

Under Strickland, counsel owes a duty "to make reasonable investigations or to make a reasonable decision that makes said investigation unnecessary." Blankenship v. Hall, 542 F.3d 1253, 1273 (11th Cir. 2008) (citing Strickland, 566 U.S. at 690–91, 104 S. Ct. at 2066). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 566 U.S. at 691, 104 S. Ct. at 2066.

Here the state court concluded that Ciener's decision not to pursue an insanity defense was a strategic one. Specifically, the state court detailed six reasons that Ciener provided for why he had decided against pursuing an insanity defense. These included Ciener's belief that insanity "is a bad defense and is used as a last resort" and his belief that an insanity defense would have been

4

unsuccessful in Hand's case because the facts showed that the murder was intentional. Further, Ciener testified that he would have had to waive his speedy trial motion to pursue an insanity defense. Ciener, who was also Hand's counsel in a related attempted murder case, had successfully opposed the state's efforts to consolidate the murder and attempted murder trials. He sought a speedy trial on the murder charge because if Hand were convicted of attempted murder first, that conviction could be introduced as an aggravating factor during the sentencing phase of the murder case to support imposing the death penalty. Delaying the trial of the murder case was not a good idea.

This case is not like Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527 (2003), where "counsel chose to abandon their investigation at an unreasonable juncture." Id. at 527, 123 S. Ct. at 2538. Nor was Ciener's decision not to pursue an insanity defense in the murder trial "the result of inattention." Id. at 535, 123 S. Ct. at 2542. He was aware of the potential for an insanity defense based on Hand's cocaine use and his history of brain damage, but Ciener decided to rely on a strategy of reasonable doubt about factual guilt, which he felt was the best theory. Unlike in Wiggins, here additional investigation would not have revealed significant information about Hand's mental history or troubled background. See id. at 531–33, 123 S. Ct. 2540–41. Ciener knew the relevant facts but declined to

seek out expert testimony to support a theory that he believed would be rejected. Moreover, pursuing that theory would have come at the cost waiving his motion for a speedy trial, which increased the risk of the death penalty if Hand were convicted on the murder charge. Strickland states that "strategic choices made after less than complete investigation are reasonable precisely to the extent that professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690–91, 104 S. Ct. at 2066. Under the circumstances of this case, we cannot conclude that the state court's application of Strickland was objectively unreasonable.

**B.**

Hand also contends that the he received ineffective assistance of counsel based on Ciener's fee arrangement, which provided representation for a fixed fee, with all costs and expenses to be paid by counsel. The state court found that the fee arraignment created a conflict but also concluded that Hand was not prejudiced. Hand argues that the state court's conclusion is contrary to the clearly established federal law of the Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708 (1980) decision. Although it is true that Sullivan held that prejudice is presumed for actual conflicts of interests, that case involved a conflict of interest based on the representation of multiple defendants. See id. at 337, 1100 S. Ct. at 1712. Since

6

Sullivan, the Supreme Court has clarified that whether Sullivan applies outside of the scope of multiple concurrent representation is an open question.  See Mickens v. Taylor, 535 U.S. 162, 175–76, 122 S. Ct. 1237, 1245–46 (2002).  In light of Mickens, we have held that "a decision that Sullivan's limited presumption of prejudice does not apply [outside the context of multiple concurrent representation] is not 'contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'  Nor is a failure to extend the Sullivan rule to [a] new context unreasonable either."  Schwab v. Crosby, 451 F.3d 1308, 1327 (11th Cir. 2006) (internal citations omitted).  Because the alleged conflict in this case does not involve the representation of multiple defendants, the state court's decision was not contrary to or an unreasonable application of the Sullivan rule.

## C.

Finally, Hand contends that he is entitled to federal habeas relief based on an allegedly inaccurate statement Ciener made during closing argument.  Ciener referred to a still image taken from a tape made by a convenience store's surveillance camera. That image showed Hand and Traffer together on the day before Traffer's murder and Traffer paying for items with his credit card. According to the State, it introduced the image  as evidence that Hand's motive for

7

killing Traffer was to steal his credit card. Ciener argued in closing that the fact that Hand and Traffer were together on the day before the murder demonstrated that the two were friends and Hand would not have murdered his friend.

In his post-conviction proceedings, Hand contended for the first time that the person in the still image is not him. He does not, however, assert that during the course of the trial he ever told Ciener that he was not picture in the image. Nor did he assert that Ciener refused to make that argument during trial.

In the state collateral proceedings, the court determined that Hand could not demonstrate prejudice under Strickland. It noted that the evidence of Hand's guilt was overwhelming. That evidence included Hand: telling his drug dealer that he was going out on the night of the murder to get more money to buy more cocaine; riding his bicycle to Traffer's house; calling a cab to pick him up outside of Traffer's house thirty minutes later; telling his friends that he had just killed someone; and using Traffer's credit cards to buy jewelry and electronics, which he sold in order to buy more cocaine.

Furthermore, the state court noted that the trial judge had instructed the jury that the attorneys' statements during closing argument were not evidence. The evidence was the still image itself, and it was for the jury to determine whether Hand was in the picture. We have held that a proper jury instruction can cure an

8

inaccurate statement by an attorney during closing argument. See Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001). In light of those circumstances, we conclude that the state court's application of Strickland to this issue was not unreasonable, and we defer to the state court's conclusion.

**AFFIRMED.**